UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAZENA KENNEDY, on behalf of herself
and all others similarly situated,

                Plaintiff,

vs.

COMPUCREDIT HOLDINGS
CORPORATION and JEFFERSON CAPITAL
SYSTEMS, LLC,

                Defendants.

Case No.: 3:12-cv-1128-J-34 TEM

**PLAINTIFF TAZENA KENNEDY'S
CLASS ACTION COMPLAINT AGAINST
DEFENDANTS COMPUCREDIT
HOLDINGS CORPORATION AND
JEFFERSON CAPITAL SYSTEMS, LLC,
AND DEMAND FOR JURY TRIAL**

FILED
2012 OCT 17 AM 11:30
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL.
JACKSONVILLE, FLORIDA

1

## NATURE OF ACTION

1.      This is a class action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, and the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §1679 *et seq.*

## PARTIES

2.      Plaintiff Tazena Kennedy ("Plaintiff") is a natural person who, at all relevant times, resided in the State of Florida, County of Duval.  Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3), and the CROA, §15 U.S.C. 1679a(1).

3.      Defendant CompuCredit Holdings Corporation ("CompuCredit") is a publicly traded company with principal offices situated at 5 Concourse Parkway, Suite 400, Atlanta, Georgia 30328.  Defendant may be served through its registered agent National Registered Agents, Inc., 3675 Crestwood Parkway, Suite 350, Duluth, Georgia  30096.

4.      CompuCredit is an entity which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5).

5.      CompuCredit is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

6.      Defendant Jefferson Capital Systems, LLC ("Jefferson Capital") is a limited liability company with principal offices situated at 16 McLeland Drive, St. Cloud, Minnesota 56303.  Jefferson Capital is registered to, and does, conduct business in the State of Florida. Jefferson Capital may be served through its registered agent LexisNexis Document Solutions Inc., 1201 Hays Street, Tallahassee, FL  32301.

2

7.      Jefferson Capital is an entity which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. §1692a(5).

8.      Jefferson Capital is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

9.      Jefferson Capital is a wholly owned subsidiary of CompuCredit.

10.     CompuCredit and Jefferson Capital are sometimes collectively referred to herein as "Defendants."

11.     Defendants acted jointly and in concert to collect purported debts incurred primarily for personal, family or household purposes, and acted jointly and in concert to collect an alleged consumer debt from Plaintiff that was incurred by Plaintiff for personal, family, or household purposes.

## JURISDICTION AND VENUE

12.     This court has jurisdiction pursuant to 15 U.S.C. §1692k(d) and 28 U.S.C. §1331.

13.     Venue is proper before this Court pursuant to 28 U.S.C. §1391(b) where the acts and transactions giving rise to Plaintiff's action occurred in this State and this District, where Plaintiff resides in this State and this District, and where Defendants transact business in this State and this District.

## FACTUAL ALLEGATIONS

### A.  Defendants' Joint Debt Collection Efforts

14.     CompuCredit is a provider of various credit and related financial services and products to the financially underserved consumer credit market, a market represented by credit risks that regulators classify as "sub-prime."  CompuCredit has traditionally served this market

principally through its marketing and solicitation of credit card accounts and other credit products and its servicing of delinquent and charged-off consumer receivables.

15.     CompuCredit's business is segmented into five reportable segments: Credit Cards, Investments in Previously Charged-Off Receivables, Retail Micro-Loans, Auto Finance, and Internet Micro-Loans. CompuCredit's Previously Charged-Off Receivables segment consists of the operations of its debt collection subsidiary, Defendant Jefferson Capital.

16.     Through Jefferson Capital, CompuCredit acquires and sells previously charged-off receivables. The charged-off receivables that are acquired and serviced (or resold) by Jefferson Capital have been deemed uncollectible and written off by the originators.

17.     Many of these charged-off receivables are uncollectible because they are time-barred. In other words, the applicable statute of limitations within which a lawsuit may be filed to collect the debt has expired.

### B. The Fresh Start Solution Balance Transfer Program

18.     Defendant Jefferson Capital, in connection with the collection of alleged debts in default, utilizes a program called the "Fresh Start Solution Balance Transfer Program" ("Balance-Transfer Program") to increase the volume and amount of its consumer debt collection recoveries.

19.     To that end, Defendants solicit consumers to participate in the Balance-Transfer Program by offering them a MasterCard credit card in exchange for payments made on a previously charged-off debt that Defendants either have purchased, or have agreed to purchase upon a consumer's acceptance of the Balance-Transfer Program offer terms.

20.     After the consumer makes a certain number of payments on the previously charged-off debt, an Emblem MasterCard credit card is made available to the consumer.

21.     As detailed in the counts below, the Emblem® MasterCard® solicitations contain materially false and misleading representations concerning the statute of limitations, the availability of credit, and credit reporting, all in violation of Federal law.

**C.  The Emblem® MasterCard® Offer**

22.     On or about October 24, 2011, Defendants mailed or caused to be mailed to Plaintiff a letter ("Emblem® MasterCard® Offer"), a true and correct copy of which is attached hereto as **Exhibit A**.

23.     The Emblem® MasterCard® Offer opens with the prominent headline, and in bold language: "Everyone deserves the opportunity to have a fresh start. For yours, read on. . ." *See* Ex. A.

24.     The offer continues: "We are pleased to provide you with an opportunity to satisfy this debt by participating in the Fresh Start Solution Program ("Program") as an option for repayment of your account." *See* Ex. A.

25.     The Emblem® MasterCard® Offer then states: "This really is the kind of debt solution you have been waiting for. Your participation is voluntary but we hope you choose to participate and complete the Program in order to qualify for a Debt Reduction Credit (reward) and a MasterCard® credit card (bonus)." *See* Ex. A.

26.     The alleged debt referenced in the Emblem® MasterCard® Offer was from "Popular Club," in the amount of $561.25, with a charge-off date of April 24, 2005. Thus, at the time of the letter, Plaintiff's alleged debt was time-barred in Florida and could not be collected in a court of law.

27.     With the Emblem® MasterCard® Offer, Defendants also sent to Plaintiff the EMBLEM® MASTERCARD® CREDIT CARD PROGRAM BANK CREDIT CARD

AGREEMENT, a true and correct copy of which is attached hereto as **Exhibit B**. ("Emblem®

Credit Card Agreement").

28.     Thereafter, through Defendants' web site www.freshstartsolutionprogram.com,

Plaintiff signed up for Defendants' Emblem® MasterCard® Offer.

29.     After signing up for the Emblem® MasterCard® Offer via Defendants' web site,

Plaintiff began receiving bills from Defendants, demanding payment of $23 per month.

30.     Plaintiff has made numerous monthly payments to Defendants pursuant to bills

received as result of Defendants' Emblem® MasterCard® Offer.

31.     Upon information and belief, Defendants, as a matter of pattern and practice, mail

or cause to be mailed to alleged debtors correspondence substantially similar or materially

identical to the October 24, 2011 correspondence mailed or caused to be mailed to Plaintiff.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2), and (b)(3) on behalf of a Class consisting of:

> All persons located in the State of Florida who, within one year before the date of
> this complaint, received an Emblem® MasterCard® Offer from Defendants,
> where such communication was substantially similar or materially identical to the
> October 24, 2011 offer received by Plaintiff.

Plaintiff also brings this action on behalf of a Sub-Class consisting of:

> All persons located in the State of Florida who, within five years before the date
> of this complaint, paid monies to Defendants as part of an Emblem®
> MasterCard® Offer substantially similar or materially identical to the October 24,
> 2011 offer received by Plaintiff.

The Class and Sub-Class are referred to collectively as "the Classes."  Excluded from the Classes

are Defendants, the officers and directors of Defendants, members of their immediate families

and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants

have or had a controlling interest.

6

33.    The proposed Classes are so numerous that joinder of all members is impracticable.  The exact number of class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.  The proposed Classes are ascertainable in that the names and addresses of all members of the Classes can be identified in business records maintained by Defendants.

34.    Plaintiff's claims are typical of the claims of the members of the Classes because Plaintiff and all of the Class members' claims originate from the same conduct, practice and procedure on the part of Defendants and Plaintiff possesses the same interests and have suffered the same injuries as each member of the Classes.

35.    Plaintiff will fairly and adequately protect the interests of the Class members and have retained counsel experienced and competent in class action litigation.  Plaintiff has no interests that are contrary to or in conflict with the members of the Classes that Plaintiff seeks to represent.

36.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Classes to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

37.    Issues of law and fact common to the members of the Classes predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the Classes.  Among the issues of law and fact common to the Classes are:

a.   Defendants' violations of the FDCPA as alleged herein;

b.   Defendants' violations of CROA as alleged herein;

c.   the existence of Defendants' identical conduct particular to the matters at issue;

d.   the availability of statutory penalties; and

e.   the availability of attorneys' fees and costs.

## CAUSES OF ACTION

## COUNT ONE: 15 U.S.C. § 1692g(a)

38.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

39.   15 U.S.C. § 1692g(a) states:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing —

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

40.     The Emblem® MasterCard® Offer provides:

**Your Right to Dispute**:  Federal law gives you thirty (30) days after you receive this letter to dispute the validity of this debt or any part of it.  If you do not dispute this debt or any part of it within the same 30-day period, we will assume that the debt is valid.  If you do dispute this debt or any part of it **(by notifying us in writing within the same 30-day period)**, then we will, as required by law, obtain and mail to you proof of the debt.  If **(within the same 30-day period)** you request **(in writing)** the name and address of your original creditor (where your original creditor is different from your current creditor), then we will furnish you with that information too.

41.     The Emblem® MasterCard® Offer's use of parentheses to qualify the manner in which the consumer may exercise his or her right to dispute the alleged debt has the effect of communicating to the least sophisticated consumer that all disputes during the statutory thirty-day period must be made in writing.

42.     A dunning letter that requires a consumer to dispute a debt in writing violates the FDCPA. *Baez v. Wagner & Hunt, P.A.*, 442 F. Supp. 2d 1273, 1276 (S.D. Fla. 2006).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.  Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.  Adjudging that CompuCredit and Jefferson Capital each violated 15 U.S.C. § 1692g(a);

c.  Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member;

d.  Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees and costs incurred in this action, including counsel fees and expert fees;

e.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

f.  Awarding such other and further relief as the Court may deem just and proper.

## COUNT TWO: 15 U.S.C. § 1692g(b)

43.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

44.     Concerning the disclosure of rights required by 15 U.S.C. § 1692g(a), 15 U.S.C. § 1692g(b) provides:

> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

45.     The mandatory disclosure requirements of 15 U.S.C. § 1692g(a) are designed to guarantee that the important validation rights and protections provided by the FDCPA are effectively communicated to the least-sophisticated consumer so that he or she may exercise them in a timely fashion.

46.     The Emblem® MasterCard® Offer states:

> **Your Right to Dispute**:  Federal law gives you thirty (30) days after you receive this letter to dispute the validity of this debt or any part of it.  If you do not dispute this debt or any part of it within the same 30-day period, we will assume that the debt is valid.  If you do dispute this debt or any part of it (by notifying us in writing within the same 30-day period), then we will, as required by law, obtain and mail to you proof of the debt.  If (within the same 30-day period) you request (in writing) the name and address of your original creditor (where your original creditor is different from your current creditor), then we will furnish you with that information too.

Ex. A.

47.     The Emblem® MasterCard® Offer further states:

> Your participation in the Fresh Start Solution™ Program ("Program") prior to the expiration of the 30-day period for dispute described above will not extinguish your right to dispute this debt or any part of it or to request the name and address of the original creditor.

> **If you take any steps to exercise any of the above-described rights within the 30-day period for dispute that begins with your receipt of this letter, then (i) the Program will no longer be available to you, (ii) your choice to participate, if any, will be cancelled, (iii) any balance transfer made will be fully reversed and (iv) any payments you have made towards the Program will be returned to you.**

Ex. A (emphasis added).

48.     Thus, the Emblem® MasterCard® Offer threatens that the exercise of any consumer right under 15 U.S.C. § 1692g(a) – including the right to request the name and address of the original creditor – shall automatically void the Emblem® MasterCard® credit card offer and result in the least-sophisticated consumer's automatic expulsion from the Fresh Start Solution™ Balance Transfer Program.

49.     Conditioning the Emblem® MasterCard® Offer's validity, and participation in the Fresh Start Solution™ Balance Transfer Program, upon the least-sophisticated consumer's failure to exercise his or her rights under 15 U.S.C. § 1692g(a), is inconsistent with the effective communication of the consumer's rights as mandated by the 15 U.S.C. § 1692g(b).

50.     The Emblem® MasterCard® Offer contradicts the notice of validation rights mandated by 15 U.S.C. § 1692g(a) and the effective communication of such rights as required by 15 U.S.C. § 1692g(a).

51.     The Emblem® MasterCard® Offer's contradiction of the notice of validation rights required by 15 U.S.C. § 1692g(a) has the opposite effect – by causing the least-sophisticated consumer to waive his or her validation rights for fear of voiding the Emblem® MasterCard® Offer and/or suffering instant expulsion from the Fresh Start Solution™ Balance Transfer Program.

52.     The Emblem® MasterCard® Offer therefore is in violation of 15 U.S.C. § 1692g(b).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.   Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.   Adjudging that CompuCredit and Jefferson Capital violated 15 U.S.C. § 1692g(b);

c.   Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member;

d.   Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees and costs incurred in this action, including counsel fees and expert fees;

e.   Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

f.   Awarding such other and further relief as the Court may deem just and proper.

### COUNT THREE: 15 U.S.C. § 1692e(10)

53.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

54.     15 U.S.C. § 1692e(10) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*       *       *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

55.     The Emblem® MasterCard® Offer states:

> **Receive the Emblem® MasterCard as a bonus for completing the Program.** Complete the simple steps outlined above and you could soon be carrying a brand new credit card.  Transfer the Remaining Balance of your outstanding debt to your new card and enjoy a 0% APR for the life of that balance.*  That's no interest or finance charges on your current debt and a credit card with an available line of new credit for new transactions when you need it.  **Sign Up!**  It's easy to participate.  There's no credit check required.  Simply <u>complete and return</u> the participation form below . . . Before you know it, you will have the fresh start you deserve."

Ex. A (emphasis in original).

56.    The Emblem® MasterCard® Offer represents to the least-sophisticated consumer:

> <u>**Time-Barred Debt**</u>: Depending on your account history and applicable law, your debt may currently be outside the applicable statute of limitations period for the purpose of taking legal action to collect this debt. Our records indicate that the account listed above has a Charge Off Date of 04/24/2005.  If your debt is time-barred at the time of this letter, your choice to participate in the Program will not be deemed to restart, revive, toll or otherwise extend the originally applicable statute of limitations period.  <u>**Regardless, we and our bank partner have agreed (for ourselves and for our respective successors and assigns) that they will never sue to collect a Fresh Start Solution ™ Program balance.**</u>

Ex. A (emphasis in original).

57.    The Emblem® MasterCard® Offer represents to the least-sophisticated consumer:

> <u>**Time-Barred Debt: Depending on your account history and applicable law, your debt may currently be outside the applicable statute of limitations period for the purpose of taking legal action to collect this debt.**</u>  Our records indicate that the account listed above has a Charge Off Date of *04/24/2005.*  Debts are considered "time-barred" when (because of the age of the debt) a debt collector may *not* sue you to collect. State law varies on when a debt collector may no longer sue to collect and there are certain circumstances that can stop the statute of limitations from running. If your present debt is outside the applicable statute of limitations period, then a legal action cannot be filed to collect this debt and legal action cannot be threatened on this debt. Whether a debt is time barred is a legal determination which requires consideration of a number of factors, including, but

13

not limited to, knowing which statute of limitations applies, knowing whether the statute of limitations has been tolled or revived, and knowing Whether any previous conduct between the consumer and the creditor bas altered the underlying agreement that created the debt. If your debt is time-barred at the time of this letter, your choice to participate in the Program will not be deemed to restart, revive, toll or otherwise extend the originally applicable statute of limitations period. **Regardless, we and our bank partner have each agreed (for ourselves and for our respective successors and assigns) that we will never sue to collect a Fresh Start Solution™ Program Balance.**

Ex. A (original emphasis).

58.     To obtain the Emblem® MasterCard® credit card, a consumer is required to participate in the Fresh Start Solution™ Balance Transfer Program.  Pursuant to the Fresh Start Solution™ Balance Transfer Program, consumers unknowingly agree to renew the statute of limitations and credit reporting periods on charged-off debt.

59.     Participation in the Fresh Start Solution™ Balance Transfer Program is an express condition precedent to acceptance of the Emblem® MasterCard® credit card offer.

60.     The Emblem® Credit Card Offer states: "by signing and returning this form and making a timely first payment:  I voluntarily ask to resolve my debt through the Fresh Start Solution™ Program." Ex. A.

61.     Immediately upon the consumer's agreement to participate in the Fresh Start Solution™ Balance Transfer Program, the balance of the consumer's old debt is transferred to a new Jefferson Capital "Balance Transfer Account."

62.     After the consumer pays a significant sum of money toward the balance of the otherwise uncollectible old debt (25%-50% of their old debt balances within 12 months) the consumer "qualifies" for an Emblem® MasterCard® credit card account which Mid America Bank & Trust Company ("MABTC") automatically issues to the consumer.

63.     Jefferson Capital then immediately transfers the remaining balance due on the Balance Transfer Account (the formerly "uncollectible" old balance) to the new Emblem® MasterCard® credit card account.

64.     The consumer's Fresh Start Solution ™ Program balance only exists during the interim period between the consumer's agreement to participate (as required to get a credit card "with an available line of credit when you need it") and MABTC's issuance of the credit card account to which the remaining balance of the formerly uncollectable debt is then immediately transferred.

65.     The Emblem® Credit Card Agreement states:

> No Waiver By Us: We reserve the right, at any time and in our sole discretion, not to impose part or all of any fee or other amount imposed pursuant to this Agreement or not to exercise any of our other rights under this Agreement. If we exercise the foregoing right, we will not waive our right to impose any such fee or other amount or our right to exercise the foregoing right or any other rights, in the future.

Ex. B.

66.     The Emblem® Credit Card Agreement further states:

> Change of Terms: Your Account is a continuing offer to extend further credit to you that we may end at any time. Subject to the limitations of applicable law, we may, at any time beginning twelve (12) months after Account opening, add, change or remove any of the terms and conditions of this Agreement. A change may be based upon factors including, but not limited to, anti-fraud policies and procedures, your record of making timely payments and staying within your established Credit Limit, your credit score and information contained in your credit report.

Ex. B.

67.     The purported third-party agreement not to sue to collect a Balance Transfer Account balance is illusory, not legally binding and is subject to unilateral modification in

accordance with the terms of the Emblem® MasterCard® Bank Card Agreement. It offers the least sophisticated consumer no protection.

68.    The purported third-party agreement not to sue to collect a Balance Transfer Account balance provides no legal protection sufficient to prevent a lawsuit by Jefferson Capital, MABTC, or CompuCredit (or others) to collect upon the participating consumer's new Emblem® MasterCard® credit card account balance.

69.    The emphasis placed on a non-binding third-party agreement not to sue to collect a Fresh Start Solution™ Program balance misleads the least-sophisticated consumer into believing that participation will not subject their previously time-barred debt to legal action, when it does exactly that.

70.    Even if the non-binding third-party agreement did offer some measure of legal protection, the Emblem® Credit Card Agreement provides for the unilateral modification of such agreement at any time without notice to the least-sophisticated consumer—thereby subjecting the least-sophisticated consumer to all manner of legal action.

71.    The Emblem® MasterCard® Offer falsely and deceptively represents that the participation in The Fresh Start Solution™ Balance Transfer Program (as is required to obtain the new credit card), will not subject the consumer to legal action to collect an alleged debt, when it does exactly that.

72.    This false, deceptive, and misleading representation was used in connection with an attempt to collect a debt in violation of 15 U.S.C. § 1692e(10).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

   a.  Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.   Adjudging that CompuCredit and Jefferson Capital each violated 15 U.S.C. § 1692g(b);

c.   Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member;

d.   Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees and costs incurred in this action, including counsel fees and expert fees;

e.   Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

f.   Awarding such other and further relief as the Court may deem just and proper.

### COUNT FOUR: 15 U.S.C. § 1692e(10)

73.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

74.   15 U.S.C. § 1692e(10) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> *      *      *

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

75.   Pursuant to the Fresh Start Solution™ Balance Transfer Program, consumers unknowingly agree to renew the statute of limitations and credit reporting periods on charged-off debt.

76.   To the least-sophisticated consumer, the Emblem® MasterCard® Offer represents:

**Time-Barred Debt**: Depending on your account history and applicable law, your debt may currently be outside the applicable statute of limitations period for the purpose of taking legal action to collect this debt. Our records indicate that the account listed above has a Charge Off Date of 04/24/2005. If your debt is time-barred at the time of this letter, your choice to participate in the Program will not be deemed to restart, revive, toll or otherwise extend the originally applicable statute of limitations period. **Regardless, we and our bank partner have agreed (for ourselves and for our respective successors and assigns) that they will never sue to collect a Fresh Start Solution ™ Program balance.**

Ex. A (emphasis in original).

77.    To the least-sophisticated consumer, the Emblem® MasterCard® Offer represents:

**Time-Barred Debt: Depending on your account history and applicable law, your debt may currently be outside the applicable statute of limitations period for the purpose of taking legal action to collect this debt.** Our records indicate that the account listed above has a Charge Off Date of *04/24/2005*. Debts are considered "time-barred" when (because of the age of the debt) a debt collector may *not* sue you to collect. State law varies on when a debt collector may no longer sue to collect and there are certain circumstances that can stop the statute of limitations from running. If your present debt is outside the applicable statute of limitations period, then a legal action cannot be filed to collect this debt and legal action cannot be threatened on this debt. Whether a debt is time barred is a legal determination which requires consideration of a number of factors, including, but not limited to, knowing which statute of limitations applies, knowing whether the statute of limitations has been tolled or revived, and knowing Whether any previous conduct between the consumer and the creditor bas altered the underlying agreement that created the. debt. If your debt is time-barred at the time of this letter, your choice to participate in the Program will not be deemed to restart, revive, toll or otherwise extend the originally applicable statute of limitations period. **Regardless, we and our bank partner have each agreed (for ourselves and for our respective successors and assigns) that we will never sue to collect a Fresh Start Solution™ Program Balance.**

Ex. A (emphasis in original).

78.     The foregoing representations concerning the applicable statute of limitations and the legal consequences of the least-sophisticated consumer's acceptance of the Emblem® MasterCard® Offer are materially false, deceptive, and misleading.

79.     Specifically, the representation:  "If your debt is time-barred at the time of this letter, your choice to participate in the Program will not be deemed to restart, revive, toll or otherwise extend the originally applicable statute of limitations period" is false as the least-sophisticated consumer's participation in the Fresh Start Solution™ Program may restart, revive, toll, and otherwise extend the originally applicable limitations period.

80.     The representation: "Whether a debt is time barred is a legal determination which requires consideration of a number of factors, including, but not limited to, knowing which statute of limitations applies, knowing whether the statute of limitations has been tolled or revived, and knowing whether any previous conduct between the consumer and the creditor bas altered the underlying agreement that created the debt[,]" is deceptive and misleading.  By portraying the limitations analysis as being too complex for the least-sophisticated consumer to undertake, the Emblem® MasterCard® Offer effectively discourages the least-sophisticated consumer from even attempting to discover whether or not his or her debt is, in fact, time-barred.

81.     The least-sophisticated consumer is certain to shy away from such an endeavor in light of the Emblem® MasterCard® Offer's subsequent false, deceptive, and misleading representation that participation in the program will protect, rather than subject, the consumer to legal action to collect the alleged debt.  Not only is that representation false, but it provides a false sense of security which further discourages the least-sophisticated consumer from attempting to discover whether the statute of limitations applicable to their alleged debt has expired.

82.     The complex portrayal of the determination as to whether legal action is time-barred, combined with the false representation that if the consumer accepts the offer, that no legal action would ever be taken, would cause the consumer to disregard and/or waive his or her rights.

83.     Upon information and belief, Defendants have, before the time of mailing, actual knowledge of what limitations periods apply to each individual account solicited for participation in the Fresh Start Solution™ Program, as well as whether or not the applicable limitations period has expired.

84.     The Emblem® MasterCard® Offer's representations concerning the determination of whether the subject debts are time-barred, and the legal effects which may be caused by participation in Fresh Start Solution™ Program, constitute false representations or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.  Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.  Adjudging that CompuCredit and Jefferson Capital  each violated 15 U.S.C. § 1692e(10);

c.  Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member;

d.  Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees and costs incurred in this action, including counsel fees and expert fees;

e.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

f.  Awarding such other and further relief as the Court may deem just and proper.

## COUNT FIVE: 15 U.S.C. § 1692e(10)

85.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

86.     15 U.S.C. § 1692e(10) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> \*       \*       \*

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10).

87.     The Emblem® MasterCard® Offer states:

> "CREDIT BUREAU REPORTING: Jefferson Capital may report your account including information such as late payments, missed payments, or other details to credit reporting agencies.  If you qualify and accept a card account, MABTC will not report negative information, such as late payments, missed payments, or other defaults to credit reporting agencies.  MABTC will only report your new card account so long as you are current and not in default.  If you become delinquent, reporting will end.

Ex. A.

88.     The Emblem® MasterCard® Offer further states:

> **NOTICE OF IMPORTANT INFORMATION about your Rights Under Federal, State, Local Law and Time-Barred Debt on the reverse side of this letter.  SUMMARY OF CREDIT TERMS for rate, fee and other cost information related to the Emblem® MasterCard® and ADDITIONAL PROGRAM DETAILS for minimum payment requirements and other conditions, enclosed with this letter.**  If you choose to participate, we will send you a "Bank Credit Card Agreement" which includes detailed APRs, fees and other information related to the Emblem® MasterCard® credit card.

Ex. A (emphasis in original).

89.     The Emblem® Credit Card Agreement states: "Entire Agreement; Interpretation: This Agreement constitutes the final expression of the credit agreement between you and us relating to your Account." Ex. B.

90.     The Emblem® Credit Card Agreement further states: "A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations." Ex. B.

91.     The Emblem® Credit Card Agreement also states:

> No Waiver By Us: We reserve the right, at any time and in our sole discretion, not to impose part or all of any fee or other amount imposed pursuant to this Agreement or not to exercise any of our other rights under this Agreement. If we exercise the foregoing right, we will not waive our right to impose any such fee or other amount or our right to exercise the foregoing right or any other rights, in the future.

Ex. B.

92.     The Emblem® Credit Card Agreement then states:

> Change of Terms: Your Account is a continuing offer to extend further credit to you that we may end at any time.  Subject to the limitations of applicable law, we may, at any time beginning twelve (12) months after Account opening, add, change or remove any of the terms and conditions of this Agreement. A change may be based upon factors including, but not limited to, anti-fraud policies and procedures, your record of making timely payments and staying within your established Credit Limit, your credit score and information contained in your credit report.

Ex. B.

93.     The Emblem® Credit Card Agreement then states:

> We reserve the right to change (to set, increase, decrease or remove) the Credit Limit for your Account and/or for specific types of Account balances from time to time. Such changes may occur without prior written notice to you and may be based upon

22

factors including, but not limited to, anti-fraud policies and procedures, your record of making timely payments and staying within the established Credit Limit on your account with us, your credit score and information contained in your credit report.

Ex. B.

94.    The Emblem® MasterCard® Offer's representations concerning credit bureau reporting, namely, that MABTC will only report positive information, is materially false, deceptive, and misleading as evidenced by the terms of the Emblem® Credit Card Agreement.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b. Adjudging that CompuCredit and Jefferson Capital each violated 15 U.S.C. § 1692g(b);

c. Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member;

d. Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees and costs incurred in this action, including counsel fees and expert fees;

e. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

f. Awarding such other and further relief as the Court may deem just and proper.

## COUNT SIX: 15 U.S.C. § 1692f

95.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

96.    15 U.S.C. § 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

97.   The Emblem® MasterCard® Offer states "JEFFERSON CAPITAL COMPLIES WITH A FEDERAL LAW CALLED THE FAIR DEBT COLLECTION PRACTICES ACT THAT PROVIDES CONSUMERS WITH CERTAIN RIGHTS." Ex. A.

98.   The Emblem® MasterCard® Offer states:

> NOTICE OF IMPORTANT INFORMATION about your Rights Under Federal, State, Local Law and Time-Barred Debt on the reverse side of this letter. SUMMARY OF CREDIT TERMS for rate, fee and other cost information related to the Emblem® MasterCard® and ADDITIONAL PROGRAM DETAILS for minimum payment requirements and other conditions, enclosed with this letter. **If you choose to participate, we will send you a "Bank Credit Card Agreement" which includes detailed APRs, fees and other information related to the Emblem® MasterCard® credit card.**

Ex. A.

99.   However, the Emblem® Credit Card Agreement states: "Entire Agreement; Interpretation: This Agreement constitutes the final expression of the credit agreement between you and us relating to your Account." Ex. B.

100.   The Emblem® Credit Card Agreement also states: "A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations." Ex. B.

101.   Then, the Emblem® Credit Card Agreement states:

> No Waiver By Us: We reserve the right, at any time and in our sole discretion, not to impose part or all of any fee or other amount imposed pursuant to this Agreement or not to exercise any of our other rights under this Agreement. If we exercise the foregoing right, we will not waive our right to impose any such fee or other amount or our right to exercise the foregoing right or any other rights, in the future.

Ex. B.

102.   The Emblem® Credit Card Agreement further provides:

Change of Terms: Your Account is a continuing offer to extend further credit to you that we may end at any time. Subject to the limitations of applicable law, we may, at any time beginning twelve (12) months after Account opening, add, change or remove any of the terms and conditions of this Agreement. A change may be based upon factors including, but not limited to, anti-fraud policies and procedures, your record of making timely payments and staying within your established Credit Limit, your credit score and information contained in your credit report.

Ex. B.

103.    The Emblem® Credit Card Agreement also states: "Unless prohibited by applicable law, you agree to pay all of our reasonable costs and attorneys' fees related to the collection and enforcement of your Account."

104.    15 U.S.C. §1692f of the FDCPA serves a backstop function, catching those "unfair practices" which manage to slip by 15 U.S.C. §§1692d & 1692e.

105.    15 U.S.C. §1692f allows the court to sanction improper conduct that the FDCPA fails to address specifically.

106.    The Emblem® MasterCard® Offer is unconscionable in that it entices consumers with the false prospect of meaningful credit access and credit rehabilitation into participation in a program subjecting them to otherwise time-barred legal action and otherwise time-barred negative credit reporting—while discouraging the least-sophisticated consumer from investigating and understanding his or her legal rights by making such an undertaking seem overly complex while simultaneously communicating a false sense of security.

107.    It is unconscionable to entice the least-sophisticated consumer into waiving her/his right to dispute the alleged debt, or any portion of it, by threatening to revoke the Emblem® MasterCard® credit card offer if the consumer takes any action to exercise their federally protected consumer rights.

108.     It is unconscionable to affirmatively represent to the least-sophisticated consumer that "JEFFERSON CAPITAL COMPLIES WITH A FEDERAL LAW CALLED THE FAIR DEBT COLLECTION PRACTICES ACT THAT PROVIDES CONSUMERS WITH CERTAIN RIGHTS" when Jefferson Capital does not comply with the FDCPA and when Jefferson Capital penalizes consumers for exercising their federally protected rights by voiding the offer and expelling them from the program.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.  Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.  Adjudging that CompuCredit and Jefferson Capital  each violated 15 U.S.C. § 1692f;

c.  Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member;

d.  Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

e.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

f.  Awarding such other and further relief as the Court may deem just and proper.
**COUNT SEVEN: 15 U.S.C. § 1679c(a)-(b)**

109.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

110.     15 U.S.C. §1679c(a)-(b) requires that any credit repair organization provide any consumer, as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer, a written statement before any contract or agreement between the consumer and the credit repair organization is executed, which reads:

**Consumer Credit File Rights Under State and Federal Law**

You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your

27

statement about disputed information with any report it issues about you.

The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:

The Public Reference Branch
Federal Trade Commission
Washington, D.C. 20580.

111. CompuCredit did at all relevant times use one or more instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that it can or will sell, provide, or perform) services, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any such activity or service.

112. CompuCredit is a "credit repair organization" within the meaning of 15 U.S.C. § 1679a(3)(A).

113. Jefferson Capital did at all relevant times use one or more instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that it can or will sell, provide, or perform) services, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any such activity or service.

114. Jefferson Capital is a "credit repair organization" within the meaning of 15 U.S.C. § 1679a(3)(A).

115. CompuCredit publicly advertises on behalf of itself and Jefferson Capital:

At CompuCredit Holdings Corporation, we believe providing credit is one of the most helpful services a business can deliver.

> Often times our customers have not exhibited a perfect credit history. To traditional banks, they appear to be high-risk. We understand, however, that everyone deserves a chance, and our business is built on a foundation of trust.

See *http://www.compucredit.com/about/providing_opportunity.html*.

116.   CompuCredit publicly advertises on behalf of itself and Jefferson Capital:

> We know that improving one's credit history can have a wide-ranging positive influence on life opportunities. Credit history can dramatically impact an individual's ability to:
>
> - finance a home
> - purchase a car
> - get affordable auto insurance
> - gain employment
> - and many other common life needs
>
> Without access to credit, opportunities to improve or establish a credit score are lessened. It can be a vicious circle. We provide our customers the chance to improve or establish a credit score, so that they can take charge of their financial lives.

See *http://www.compucredit.com/about/providing_opportunity.html*.

117.   CompuCredit and Jefferson Capital advertise:

> The balance transfer program that we have developed in this area is truly unique and offers a win-win proposal for our company and our customers. It is the most efficient and quickest way we know for someone to regain a usable credit card without having to put up a security deposit after they have had severe credit problems. Our customers seem to put great value in this product.

118.   The Emblem® MasterCard® Offer states: "This really is the kind of debt solution you have been waiting for.  Your participation is voluntary but we hope you choose to participate and complete the Program in order to qualify for a Debt Reduction Credit (reward) and a MasterCard® credit card (bonus)."  Ex. A.

119.   Participation in the Fresh Start Solution™ Balance Transfer Program is an express condition precedent to acceptance of the Emblem® MasterCard® credit card offers.

120.    Payment by Plaintiff and members of the proposed Classes of a significant sum of money toward the balance of the otherwise uncollectible old debt (25%-50% of their old debt balances within 12 months) is an express condition precedent to Plaintiff and members of the proposed Classes becoming eligible to receive an Emblem® MasterCard® credit card line of credit issued by MABTC.

121.    The Emblem® MasterCard® Offer states:

> **Receive the Emblem® MasterCard as a bonus for completing the Program.** Complete the simple steps outlined above and you could soon be carrying a brand new credit card. Transfer the Remaining Balance of your outstanding debt to your new card and enjoy a 0% APR for the life of that balance.* That's no interest or finance charges on your current debt and a credit card with an available line of new credit for new transactions when you need it. **Sign Up!** It's easy to participate. There's no credit check required. Simply complete and return the participation form below . . . Before you know it, you will have the fresh start you deserve.

Ex. A.

122.    Immediately upon the consumer's agreement to participate in the Fresh Start Solution™ Balance Transfer Program, the balance of the consumer's old debt is transferred to a new Jefferson Capital "Balance Transfer Account."

123.    The Emblem® MasterCard® Offer does not contain the separate statement required by 15 U.S.C. §1679c(a)-(b).  Ex. A.

124.    Plaintiff paid monies to Defendants as part of the Balance Transfer Program.

125.    CompuCredit is a credit repair organization which failed to provide Plaintiff with the separate statement required by 15 U.S.C. §1679c(a)-(b).

126.    Jefferson Capital is a credit repair organization which failed to provide Plaintiff with the separate statement required by 15 U.S.C. §1679c(a)-(b).

127.    Indeed, the Emblem® MasterCard® Offer states that "MABTC will not report negative information, such as late payments, missed payments, or other defaults to credit reporting agencies." *See* Ex. B.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.  Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.  Adjudging that CompuCredit and Jefferson Capital  each violated 15 U.S.C. §1679c(a)-(b);

c.  Awarding Plaintiff, and all those similarly situated, their actual damages sustained as a result of the defendants' failure to comply with 15 U.S.C. §1679c(a)-(b);

d.  Awarding Plaintiff, and all those similarly situated, punitive damages in an amount as this Court may allow;

e.  Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees incurred in this action, including counsel fees and expert fees;

f.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

g.  Awarding such other and further relief as the Court may deem just and proper.

**COUNT EIGHT: 15 U.S.C. § 1679d(a)-(b)**

128.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

129.    15 U.S.C. §1679d(a) states:

No services may be provided by any credit repair organization for any consumer—

(1) unless a written and dated contract (for the purchase of such services) which meets the requirements of subsection (b) of this section has been signed by the consumer; or

(2) before the end of the 3-business-day period beginning on the date the contract is signed.

15 U.S.C. §1679d(a)(1),(2).

130.   15 U.S.C. §1679d(b) states:

No contract referred to in subsection (a) of this section meets the requirements of this subsection unless such contract includes (in writing)—

(1) the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person;

(2) a full and detailed description of the services to be performed by the credit repair organization for the consumer, including—

(A) all guarantees of performance, and

(B) an estimate of—

(i) the date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete, or

(ii) the length of the period necessary to perform such services;

(3) the credit repair organization's name and principal business address; and

(4) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

15 U.S.C.A. § 1679d(a)(b).

131.   CompuCredit did not provide Plaintiff with a contract described by 15 U.S.C. § 1679d, nor did Plaintiff return to CompuCredit a written and dated contract as required by 15 U.S.C. § 1679d(a)-(b) prior to Defendants' provision of services to Plaintiff.

132.   Jefferson Capital did not provide Plaintiff with a contract described by 15 U.S.C. §1679d, nor did Plaintiff return to Jefferson Capital a written and dated contract as required by 15 U.S.C. §1679d(a)-(b) prior to Defendants' provision of services to Plaintiff.

133.   Plaintiff paid monies to Defendants as part of the Balance Transfer Program.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b. Adjudging that CompuCredit and Jefferson Capital  each violated 15 U.S.C. §1679d(a)-(b);

c. Awarding Plaintiff, and all those similarly situated, their actual damages sustained as a result of the defendants' failure to comply with 15 U.S.C. §1679d(a)-(b);

d. Awarding Plaintiff, and all those similarly situated, punitive damages in an amount as this Court may allow;

e. Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees incurred in this action, including counsel fees and expert fees;

f. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

g. Awarding such other and further relief as the Court may deem just and proper.

**COUNT NINE: 15 U.S.C. § 1679b(b)**

134.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

135.   15 U.S.C. §1679b(b) provides:

No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

136.    15 U.S.C. §1679b(b) prohibits acceptance of any payment before fully performing all services.

137.    Jefferson Capital represented to Plaintiff that it would perform one or more agreed upon services in connection with the Emblem® MasterCard® Offer and/or the Fresh Start Solution™ Balance Transfer Program.

138.    The manner in which Jefferson Capital markets its services precludes Jefferson Capital from rendering the services it has agreed to perform before charging or receiving money or other valuable consideration for the performance of the service.

139.    Jefferson Capital charged and received a monetary amount from Plaintiff in exchange for services represented, prior to fully performing such services.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.    Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.    Adjudging that Jefferson Capital violated 15 U.S.C. § 1679b(b);

c.    Awarding Plaintiff, and all those similarly situated, their actual damages sustained as a result of Jefferson Capital's failure to comply with 15 U.S.C. § 1679b(b);

d.    Awarding Plaintiff, and all those similarly situated, punitive damages in an amount as this Court may allow;

e.    Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees incurred in this action, including counsel fees and expert fees;

f.    Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

g.    Awarding such other and further relief as the Court may deem just and proper.

**COUNT TEN: 15 U.S.C. § 1679(a)(3)**

140.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-37 as if fully set forth herein.

141.   15 U.S.C. § 1679b(a)(3) provides that "[n]o person may ... make or use any untrue or misleading representation of the services of the credit repair organization."

142.   Under section 15 U.S.C. § 1679b(a)(3), liability attaches even if the representation made is not made for the purpose of inducing a person to purchase a particular service or good.

143.   Liability attaches for violation of 15 U.S.C. § 1679b(a)(3) if a statement made is untrue or misleading.

144.   15 U.S.C. § 1679b(a)(3) does not require a showing of reliance or damages.

145.   The Emblem® MasterCard® Offer opens with the prominent headline: **"Everyone deserves the opportunity to have a fresh start.  For yours, read on. . ."** Ex. A (emphasis in original).

146.   The Emblem® MasterCard® Offer states:

> **Receive the Emblem® MasterCard as a bonus for completing the Program.**  Complete the simple steps outlined above and you could soon be carrying a brand new credit card.  Transfer the Remaining Balance of your outstanding debt to your new card and enjoy a 0% APR for the life of that balance.*  That's no interest or finance charges on your current debt and **a credit card with an available line of new credit for new transactions when you need it.  Sign Up!**  It's easy to participate.  There's no credit check required.  Simply complete and return the participation form below . . . Before you know it, you will have the fresh start you deserve."

Ex. A (emphasis added).

147.   The Emblem® MasterCard® Offer represents: "Once you have paid the Total Payment to Qualify Amount, you will receive a Debt Reduction Credit of $169.25 and you will

qualify for a credit card.  Your remaining balance of $208.00* will then be transferred to a new credit card account."  Ex A.

148.    The automatic transfer of the consumer's Jefferson Capital Balance Transfer Account balance to the new credit card account substantially reduces the available credit line of the Emblem® MasterCard® credit card—and therefore its value to the consumer.

149.    The representation that through the Emblem® MasterCard® Offer Defendants will provide the consumer with a meaningful line of consumer credit available for transactions when the consumer needs it is false, deceptive, and materially misleading.

150.    The Emblem® MasterCard® Offer also represents:  **"MABTC is not involved with the collection of debt as part of this program."**  (emphasis in original).  Ex. A.  This representation is false, deceptive, and materially misleading.  (*See* Count Five, *supra*).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.  Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.  Adjudging that CompuCredit and Jefferson Capital each violated 15 U.S.C. §1679b(a)(3):

c.  Awarding Plaintiff, and all those similarly situated, their actual damages sustained as a result of the defendants' failure to comply with 15 U.S.C. §1679b(a)(3);

d.  Awarding Plaintiff, and all those similarly situated, punitive damages in an amount as this Court may allow;

e.  Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees incurred in this action, including counsel fees and expert fees;

f.  Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

g.  Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.


DATED:  October 15, 2012

GREENWALD DAVIDSON PLLC
MICHAEL L. GREENWALD
Florida Bar No. 761761
JAMES L. DAVIDSON
Florida Bar. No. 723371


_/s/ James L. Davidson_
JAMES L. DAVIDSON

5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561.826.5477
Fax: 561.961.5684
mgreenwald@mgjdlaw.com
jdavidson@mgjdlaw.com

WEISBERG & MEYERS, LLC
AARON D. RADBIL
Florida Bar No. 047117
5025 N. Central Ave. #602
Phoenix, AZ 85012
Telephone: 888.595.9111 ext. 122
Fax: 866.577.0963
aradbil@attorneysforconsumers.com

_Attorneys for Plaintiff and the Proposed Classes_